UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00771-TBR

C. WILLIAM HELM                                                                    PLAINTIFF

v.

ALLISON RATTERMAN, *et al.*                                              DEFENDANTS

**Memorandum Opinion and Order**

In 2009, the University of Louisville School of Medicine chose not to renew the contract of Dr. C. William Helm, a cancer researcher, after he was accused of plagiarizing a colleague's work.   That accusation and the events that followed gave rise to no less than four lawsuits, including two in federal court.   This Court dismissed Helm's first federal suit against two University deans, holding that while Helm had a property interest in having the University follow its research misconduct policy, he had not filed his claim within the one-year statute of limitations.   *Helm v. Eells*, No. 3:14-CV-00654-TBR, 2015 WL 1778367 (W.D. Ky. Apr. 20, 2015); *Helm v. Eells*, No. 3:14-CV-00654-TBR, 2015 WL 3849614 (W.D. Ky. Jun. 22, 2015) (collectively "*Helm I*").   The Sixth Circuit affirmed *Helm I* on appeal. *Helm v. Eells*, 642 F. App'x 558 (6th Cir. 2016).

In this case, Helm brings suit against four different University of Louisville officials.   Alongside various state-law claims, Helm alleges Defendants violated his due process rights by classifying the plagiarism complaint against him as "internal" rather than "external."   This determination meant the University did not have to follow certain federal requirements for investigating research misconduct.

Defendants now move to dismiss Helm's complaint, arguing his §1983 due process claims and several of his state-law claims are time-barred, and his fraud claim was not pled with particularity. *See* [DN 7.]

For the reasons explained below, Defendants' motion will be GRANTED IN PART and DENIED IN PART. The Court agrees that Helm's § 1983 claims are untimely. A one-year statute of limitations applies to those claims, and the limitations period begins to run when the plaintiff "knows or has reason to know of [his] injury." *Helm I*, 642 F. App'x at 561 (citations omitted). Here, deposition testimony and legal filings from a related state court action demonstrate Helm knew or should have known Defendants classified the plagiarism allegation as "internal" no later than November 2015, more than a year before Helm filed this suit. Those claims must be dismissed.

Further, Helm has failed to state his fraud claim with particularity, as required by Federal Rule of Civil Procedure 9(b). However, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment," *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (citation omitted). The Court will afford Helm an opportunity to amend his complaint to comply with Rule 9(b).

Finally, if Helm is able to state a claim for fraud, he may be entitled to equitable tolling on his tortious interference with contractual relations, interference

with a prospective advantage, and breach of fiduciary duty claims. The Court will allow those to proceed.[1]

## I. Facts and Procedural History

This case begins nearly eight years ago, when one of Dr. C. William Helm's colleagues accused him of plagiarism. In July 2009, Dr. Lynn Parker told Dr. Doug Taylor she suspected Helm had copied a portion of Taylor's National Institutes of Health (NIH) grant application in submitting Helm's own Center of Environmental Genomics (CEGIB) grant. *Helm v. Eells*, 642 F. App'x 558, 560 (6th Cir. 2016); [DN 1 at 5-6]. In accordance with the University's Office of Research Integrity (ORI) policy, Taylor made the University's Research Integrity Ombudsperson, Dr. Robert Staat, aware of Helm's possible plagiarism. *Helm I*, 642 F. App'x at 560; [DN 1 at 5-6]. Staat reviewed Taylor's allegations and told Taylor that his complaint against Helm fell within the University's guidelines for research misconduct. [DN 1 at 5-6.] Staat advised Taylor to contact Dr. Allison Ratterman, Director of the Research Integrity Program, for help filing a research misconduct complaint. [*Id.* at 6.] Ratterman met with Taylor and noted that Helm's CEGIB grant was a "Federal Flow Through." [*Id.*] She also asked Dr. Eleanor Lederer, the Associate Research Integrity Ombudsperson, to meet and discuss Helm's case. [*Id.* at 7.]

Meanwhile, Dr. Parker also told Dr. Christine Cook, Helm's department chair, that she suspected Helm had plagiarized Taylor's work. *Helm I*, 642 F.

---

[1] Helm also moves for oral argument on Defendants' motion. [DN 16.] After a thorough review of the record and the parties' arguments, the Court does not believe oral argument is necessary. Helm's motion will be DENIED AS MOOT.

App'x at 560. The allegation eventually made its way to Dr. Tracy Eells, Associate Dean for Faculty Affairs, and Dr. Edward Halperin, Dean of the School of Medicine. *Id.* As a result, the University chose not to promote Helm to a tenured professor position, and did not renew his contract following the 2009-2010 academic year. *Id.* Those decisions formed the basis of Helm's 2014 suit against Eells and Halperin.

The University's ORI investigation into Helm's alleged misconduct continued into 2010. [DN 1 at 8.] At this time, Helm was still unaware of Taylor's plagiarism accusation. [*Id.*] Ratterman, Lederer, and Staat all reviewed the case and the relevant documents. [*Id.*] Additionally, Ratterman consulted with Dr. Pamela Feldhoff, Associate Vice President for Research, and Angela Koshewa, University Counsel. [*Id.* at 9.] Eventually, an inquiry panel was formed in fall 2010 and met for the first time on November 30. [*Id.* at 10.] Helm was not notified of the ORI investigation until after that meeting, on December 6, 2010. [*Id.* at 11.] Two members of the inquiry panel determined the plagiarism allegations warranted further investigation, so the "Deciding Official" under the ORI policy, Dr. William Pierce, formed an investigation committee. [*Id.* at 11-12.] In May 2011, the committee interviewed Helm and determined the plagiarism allegations against him were meritless. [*Id.* at 12]; *Helm I*, 642 F. App'x at 561.

Helm's claims against Eells and Halperin in *Helm I* and against Defendants in this suit are based primarily upon the University's ORI policy. In large part, the policy is derived from federal regulations promulgated by the United States

Public Health Service (PHS).  *See* 42 C.F.R. Part 93.  As the ORI policy explains, it does not apply to every case of research misconduct:

> This policy applies to allegations of research misconduct (fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results) involving:
>
> - An individual who, at the time of the alleged research misconduct, was employed by, was an agent of, or was affiliated by contract or agreement with this institution; . . . and
>
> - PHS support[ed] biomedical or behavioral research, research training or activities related to that research or research training, such as the operation of tissue and data banks and the dissemination of research information, (2) applications or proposals for PHS support for biomedical or behavioral research, research training or activities related to that research or research training, or (3) plagiarism of research records produced in the course of PHS supported research, research training or activities related to that research or research training.  This includes any research proposed, performed, reviewed, or reported, or any research record generated from that research, regardless of whether an application or proposal for PHS funds resulted in a grant, contract, cooperative agreement, or other form of PHS support.
>
> This policy and the associated procedures do not apply to . . . other types of violations of University research policy or misconduct in research.

[DN 1-2 at 5 (footnotes omitted).]  Put simply, the ORI policy applies when a person affiliated with the University is alleged to have engaged in misconduct related to PHS-supported research.  If PHS-supported research is not involved, the ORI policy does not apply; however, "[t]he Executive Vice President for Research must approve any significant variation in procedure prior to its initiation," and "[a]ny change from normal procedures must ensure fair treatment to the subject of the inquiry or investigation."  [*Id.*]

5

The ORI policy lays out in great detail the responsibilities of those involved in investigations, and also provides due process protections to persons accused of research misconduct. For instance, Helm alleged in his first federal suit Eells and Halperin failed to follow the policy provision directing that "[a]ll institutional members will report observed, suspected, or apparent research misconduct to the Research Integrity Ombudsperson." [*Id.* at 12]; *Helm I*, 642 F. App'x at 561. Here, Helm complains these Defendants deprived him of other due process protections. He says Defendants failed to promptly notify him of the inquiry, prepare a proper charge, and offer him an opportunity to object to the inquiry panel composition – all things guaranteed by the ORI policy. *See* [DN 1 at 10-12.]

Helm claims Defendants deprived him of these protections because they wrongfully classified his CEGIB grant as "internal," i.e., as not involving PHS-supported research. He made this discovery during the course of litigation in *Helm v. University of Louisville*, a related suit in Jefferson County, Kentucky Circuit Court. On October 12, 2015, the University served Helm with discovery responses in that case, stating in part that "[t]he Research Misconduct Policy . . . was not applicable to Doug Taylor's allegation against Helm." [DN 7-23 at 6.] Helm deposed Ratterman on November 2, 2015. In her deposition, Ratterman testified that "[t]he complaint that was filed by Dr. Douglas Taylor against Dr. Helm was assessed to be an internal case," meaning the complaint "did not meet the scope of [the ORI] policy." [DN 7-25 at 4.] Ratterman elaborated that in "an internal proceeding, the Institution would not have an obligation to follow the formal federal

regulation." [*Id.* at 5.] During her investigation, Ratterman said she contacted the University's Office of Grants Management to obtain a copy of Helm's CEGIB grant, but that office did not have a copy because it was an internal grant. [*Id.* at 6-7, 9.] Because the University classified Helm's CEIGB grant as internal, Ratterman testified, the University used the ORI policy as guidance rather than mandatory authority. [*Id.* at 10.]

On November 19, 2015, Helm filed a motion for attorney's fees in the Jefferson Circuit Court action. As grounds for that motion, Helm argued portions of Ratterman's deposition contradicted the University's earlier statement in discovery that the ORI policy did not apply to Taylor's plagiarism complaint against Helm. [DN 7-24 at 5-6.] Helm stated, "The canard that the Research Misconduct Policy was 'not applicable' to the research misconduct allegation made against Helm in 2009 consumed a disproportionate share of Ratterman's deposition. It is now undisputed . . . that the Research Misconduct Policy 'was applicable' to the plagiarism allegation against Helm." [*Id.* at 5.] The Jefferson Circuit Court eventually denied Helm's motion. *See* [DN 11-6 at 3.]

Discovery in the state court action continued. On January 13, 2016, the University disclosed a letter it previously received from the federal Office of Research Integrity, Division of Investigative Oversight (DIO). In that letter, dated March 24, 2015, DIO stated that Helm's case "was brought to [its] attention when the respondent alleged procedural deficiencies in the institution's handling of the matter and requested restoration of his reputation." [DN 11-7 at 2.] After

reviewing the pertinent documents, DIO concluded that Taylor's allegation fell within its jurisdiction because the source document of the alleged plagiarism was Taylor's NIH grant application, which involved federal funding. [*Id.*] In other words, to borrow the University's parlance, DIO classified Taylor's complaint as "external" rather than "internal." However, DIO concurred with the University's determination that Helm had not committed plagiarism, and closed its case with no further action. [*Id.*]

Helm filed this case on December 6, 2016. *See* [DN 1.] In his complaint, he asserts six separate claims against Ratterman, Koshewa, Feldhoff, and Lederer: "violations of 42 U.S.C. § 1983, a conspiracy to violate 42 U.S.C. § 1983, fraud and misrepresentation, intentional interference with prospective advantage, tortious interference with contract, and breach of fiduciary duties." [*Id.* at 1.] Helm's § 1983 claims are premised upon Defendants' alleged violation of Helm's Fourteenth Amendment due process rights.

Defendants now move to dismiss Helm's complaint. *See* [DN 7.] They argue this Court's decision in *Helm I* bars any claim that they deprived Helm of a liberty interest in his reputation or a property interest in his continued employment or promotion. Further, while Defendants concede Helm has a property interest in having the ORI policy followed, they say that claim, Helm's interference claim, and his breach of fiduciary duty claim are all time-barred. Lastly, Defendants posit Helm has failed to plead the elements of his fraud claim with particularity. Following responses and replies, Defendants' motion is ripe for adjudication.

## II. Standard of Review

Although Defendants filed a motion to dismiss, both parties have presented and relied upon substantial evidence and matters outside the pleadings. Accordingly, the Court will treat Defendants' motion as one for summary judgment. Fed. R. Civ. P. 12(d); *Song v. Elyria*, 985 F.2d 840, 842 (6th Cir. 1993).

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52). As the parties moving for summary judgment, Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of each of Helm's claims. Fed. R. Civ. P. 56(c); see *Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Assuming Defendants satisfy their burden of production, Helm "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III. Discussion

At its core, Defendants' motion presents a straightforward question: when should Helm have known Defendants classified Taylor's plagiarism complaint against him as "internal," thereby relieving the University of its duty to strictly comply with the ORI policy? Helm says this occurred in January 2016, when the University disclosed the letter from the federal Division of Investigative Oversight. However, while the DIO letter might provide strong support for Helm's claim that Defendants misclassified Taylor's complaint, the claim itself became reasonably apparent in November 2015, when Defendant Ratterman admitted during her deposition that Taylor's plagiarism complaint was classified as "internal" in 2009. Helm's § 1983 claims, filed more than one year later, are therefore untimely. In contrast, a five-year statute of limitations applies to Helm's state-law claims. If Helm can state a claim for fraudulent concealment with particularity, equitable tolling might save those claims from being time-barred.

### A. § 1983

Helm first claims Defendants violated 42 U.S.C. § 1983 by depriving him of due process protections under the Fourteenth Amendment. [DN 1 at 14-15.] In *Helm I*, this Court held Helm suffered no deprivation of his liberty interest in his

reputation because he was able to find other employment soon after the University decided not to renew his contract. *Helm I*, 2015 WL 1778367 at *3. The Court further held Helm had no legitimate claim of entitlement, and thus no property interest, in having his contract renewed or receiving a promotion. *Id.* at *4-5. The Sixth Circuit affirmed both findings. *Helm I*, 642 F. App'x at 565-68. Defendants argue, and Helm apparently concedes, that any similar claims in this action are barred by issue preclusion. *See* [DN 7-1 at 10-12; DN 11 at 12.]

Helm did, however, have a property interest in having Eells and Halperin comply with the ORI policy, because "a teacher has a property interest in a school complying with its own policies." *Helm I*, 2015 WL 1778367, at *5 (citing *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 409 (6th Cir. 1997)). But the Court found Helm's suit, filed in September 2014, fell outside the one-year statute of limitations applicable to his § 1983 claim, because Helm should reasonably have known Eells and Halperin failed to comply with the ORI policy in May 2013. *Helm I*, 2015 WL 3849614 at *4. The Sixth Circuit affirmed, holding Helm should have been aware of his claim in June or July 2013. *Helm I*, 642 F. App'x at 562-63.

Helm's claim against these Defendants is analogous. He says they "denied Helm's property due process protections because they said the [ORI] policy was 'inapplicable' to Taylor's 2009 plagiarism claim against Helm." [DN 11 at 3.] And as in *Helm I*, these Defendants argue Helm filed his claim too late.

Kentucky's one-year statute of limitations for personal injury claims applies to Helm's § 1983 claims, but federal law governs when the limitations period begins

to run. *Helm I*, 642 F. App'x at 561 (citing *Hall v. Spencer Cty.*, 583 F.3d 930, 933 (6th Cir. 2009); Ky. Rev. Stat. Ann. § 413.140(1)(a); *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)). "Under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' A plaintiff has 'reason to know' of an injury if he or she 'should have discovered it through the exercise of reasonable diligence.'" *Id.* (quoting *Johnson*, 777 F.3d at 843). Helm filed his complaint on December 6, 2016, so in order for his § 1983 claims to be timely, his constitutional injury must not have become reasonably apparent until sometime after December 6, 2015.

Helm's purported injury is Defendants' alleged misclassification of Taylor's plagiarism complaint as "internal" rather than "external." If Defendants had correctly determined the complaint involved federal funding, Helm says, the University would have been required to strictly comply with the ORI policy and afford him all of its protections. As to Helm's § 1983 claims, then, the Court must determine when Helm knew or had reason to know Defendants misclassified his case.

Helm argues the earliest he could have been aware of his claims is January 13, 2016. On that date, the University disclosed for the first time the March 2015 letter from the federal Division of Investigative Oversight, in which DIO stated its conclusion that the 2009 plagiarism case did in fact involve PHS support. Helm says the letter "demonstrates that the November and December 2015 sworn testimony of Ratterman, Lederer, and Feldhoff, and the University's Decemver 7,

2015 pleading in *Helm v. UofL*, [was] demonstrably false and deceptive."   [DN 11 at 6.]   "If Helm had timely received Garfinkel's March 2015 letter before the November and December 2015 discovery depositions of Ratterman, Lederer, and Feldhoff," Helm argues, "they could not have testified that the plagiarism claims alleged against Helm did not fall within the 'scope' of the Research Misconduct Policy.   And Helm would have had sufficient facts to immediately file his § 1983 claim."   [*Id.* at 8.]

However, there is ample evidence of record suggesting Helm should have realized Defendants classified his case as "internal" before the DIO letter was disclosed.   Helm deposed Ratterman on November 2, 2015.   During her deposition, Ratterman explicitly stated the University had not applied the ORI policy to Taylor's complaint against Helm because it was "an internal case."   [DN 7-25 at 4.] Standing alone, perhaps this testimony would not be enough to put Helm on notice that Defendants misclassified the complaint against him in 2009.   But Ratterman's testimony does not stand alone.   Helm also had prior knowledge of both the ORI policy and his allegedly plagiarized CEGIB grant. taken together with Ratterman's testimony, these items should have signaled to Helm that Defendants got it wrong in 2009.  Following Ratterman's deposition, Helm had all the necessary pieces at his disposal to discover his misclassification claim.

What's more, shortly after Ratterman's deposition, Helm demonstrated he had actual knowledge of Defendants' possible misclassification.   On November 19, 2015, Helm filed a motion for attorney's fees in state court.   In that motion, Helm

stated, "The canard that the Research Misconduct Policy was 'not applicable' to the research misconduct allegation made against Helm in 2009 consumed a disproportionate share of Ratterman's deposition. It is now undisputed . . . that the Research Misconduct Policy 'was applicable' to the plagiarism allegation against Helm." [DN 7-24 at 5.] Helm's November 19 legal filing dispels any notion that his claim for misclassification was unclear following Ratterman's deposition.

To be sure, the 2015 letter from the federal DIO lends strong support to the notion that Defendants did in fact misclassify Taylor's complaint against Helm. But the issue presently before the Court is not whether Defendants' decision not to apply the ORI policy was correct. Rather, the issue is when Helm knew or had reason to know Defendants misclassified the complaint. Ratterman's November 2 deposition put Helm on notice of his claim, and Helm's November 19 motion confirms he had knowledge of that claim more than one year before he filed suit. His § 1983 claim is therefore time-barred.

As he did in *Helm I*, Helm argues he is entitled to equitable tolling because Defendants concealed the 2015 DIO letter until January 2016. Kentucky's equitable tolling statute provides that "[w]hen a cause of action . . . accrues against a resident of this state, and he by . . . concealing himself or by any other indirect means obstructs the prosecution of this action, the time of the continuance of the . . . obstruction shall not be computed" as part of the limitations period. KRS 413.190(2). "To establish entitlement to equitable tolling . . . the plaintiff must show 'some act or conduct which in point of fact misleads or deceives the plaintiff

and obstructs or prevents him from instituting his suit while he may do so.'" *Helm I*, 642 F. App'x at 563 (quoting *Munday v. Mayfair Diagnostic Lab., Ky.*, 831 S.W.2d 912, 914 (Ky. 1992)). The limitations period begins when the defendant's concealment is revealed or when the plaintiff "should have discovered his cause of action by reasonable diligence." *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 575 (Ky. 2009) (citation omitted).

Here, Helm alleges Defendants affirmatively withheld the 2015 DIO letter until January 2016. "If the . . . letter had been timely produced," Helm says, "Defendants could not have testified . . . that the Research Misconduct Policy did not apply to the plagiarism allegations against Helm." [DN 11 at 15.] But this is simply not the case. Again, the DIO letter is persuasive evidence that Defendants wrongly determined Helm's plagiarism case did not involve federal dollars. However, Defendants made that determination in 2009. The DIO letter, on the other hand, represents the findings of an after-the-fact review initiated by Helm in 2015. Defendants did not have the DIO letter at their disposal when they initially determined Helm's case was "internal." There is no reason to believe Defendants would have testified any differently regarding their 2009 decision-making had the 2015 letter been disclosed prior to their depositions.

Alleged concealment aside, "equitable tolling ends once [the] plaintiff discovers his injury, at which point the statute of limitations resumes." *Helm I*, 642 F. App'x at 564. Helm's November 19 motion in state court demonstrates that on or before that date, Helm both knew Defendants classified Taylor's plagiarism

complaint as "internal" in 2009 and disputed that classification. That knowledge is enough to start the one-year clock on Helm's § 1983 claim, and time ran out before he filed his complaint on December 6, 2016.

Helm also brings a § 1983 claim for civil conspiracy, alleging Defendants conspired together to deprive him of due process. [DN 1 at 15.] However, because Helm fails to establish an underlying constitutional violation, he cannot succeed on a conspiracy claim. *Wiley v. Oberlin Police Dept.*, 330 F. App'x 524, 530 (6th Cir. 2009) (citing *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007)). Moreover, Helm offers no explanation why his § 1983 civil conspiracy claim would not also be time-barred. It too must be dismissed.

## B. Fraud

Helm's next claim is for fraud. He says his fraud claim, as well as his breach of fiduciary duty claim, is "premised upon what Defendants had a duty to disclose to Helm, but failed to disclose and the partial truths made in Lederer's December 6, 2010 letter to Helm." [DN 11 at 17.] Defendants argue Helm has failed to plead fraud with particularity, as required by Rule 9(b).

At the outset, there is some confusion regarding the nature of Helm's fraud claim. In his complaint, Helm incorporates by reference the allegations in the preceding paragraphs, states that "[t]he actions and omissions set forth above constitute evidence of" the six elements of fraudulent misrepresentation under Kentucky law, and avers that he has suffered damages as a result. [DN 1 at 15-16.] However, in response to Defendants' motion to dismiss, Helm argues that his

complaint also states a claim for fraud by omission. *See* [DN 11 at 17-18.] The two claims require proof of different elements. To establish a successful claim of fraudulent misrepresentation, the plaintiff must establish "that (1) the defendant made a material representation to the plaintiffs, (2) the representation was false, (3) the defendant knew that it was false or made it recklessly, (4) the defendant made the misrepresentation to induce the plaintiff to act, (5) the plaintiff relied on it, and (6) suffered injury as a result." *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 886-87 (E.D. Ky. 2015) (citing *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)). In contrast, to succeed on a fraud by omission (also known as fraudulent concealment) claim, the plaintiff must prove that "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (citing *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003)).

Regardless of how Helm's fraud claim is characterized, the same heightened pleading standard applies. *See RQSI Global Asset Master Fund, Ltd. v. Apercu Int'l PR LLC*, ___ F. App'x ___, 2017 WL 1149110, at *3-5 (6th Cir. Mar. 27, 2017). Rule 9(b) directs that "the circumstances constituting fraud . . . shall be stated with particularity," although "[m]alice, intent, knowledge, and other condition of a mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *Minger v. Green*, 239

F.3d 793, 800 (6th Cir. 2001).   Accordingly, the plaintiff "must generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud."   *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014) (citing *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).   "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)."   *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) (citation omitted).   The purposes animating Rule 9(b) are "(1) to alert defendants to the particulars of the allegations against them so they can intelligently respond; (2) to prevent 'fishing expeditions'; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters."   *Id.* (citing *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011)).

Helm's complaint does contain a handful of factual allegations that could be construed to support a claim for fraudulent concealment.   For instance, Helm alleges that "Defendants caused the research misconduct proceeding . . . to be concealed entirely from Helm until December 2010."   [DN 1 at 7.]   He also says "Defendants concealed the formal report [from the Inquiry Panel] and the December 31, 2010 'cover letter' from Helm."   [*Id.* at 12.]   If true, these facts would go toward the second element, Defendants' failure to disclose a material fact.   *Giddings & Lewis*, 348 S.W.3d at 747 (citation omitted).   However, Helm fails to allege that Defendants had a duty to disclose these facts, or that their failure to do so induced

him to act – two necessary elements of fraudulent concealment. *Id.* Further, although Helm correctly recites the elements of fraudulent misrepresentation, he fails to "specify the time, place, and content of the alleged misrepresentation[s]" or to "identify the fraudulent scheme and the fraudulent intent of the defendant[s]." *SFS Check*, 774 F.3d at 358 (citation omitted). Whether couched as a claim for fraud by commission or omission, Helm's complaint falls short of Rule 9(b)'s heightened pleading requirements. *See Bennett v. MIS Corp*, 607 F.3d 1076, 1101 (6th Cir. 2010) (upholding dismissal of fraud claims when plaintiffs failed to allege intent element); *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (upholding dismissal when "plaintiffs . . . articulated general averments of fraud attributed to 'the defendants.'"); *Heaverin v. Boeing Cap. Corp.*, 246 F. Supp. 2d 728, 732 (W.D. Ky. 2003) (dismissing fraud complaint that "fail[ed] to allege who . . . relied on the . . . misrepresentations" and "fail[ed] to show a causal link between the misrepresentations and the [plaintiff's] injury.").

The question, then, is the proper remedy. Rule 15(a)(2) provides that courts should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, the Sixth Circuit directs that its district courts should err on the side of "liberality in allowing amendments to a complaint." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)). In the context of insufficiently pled fraud claims, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by

amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (quoting

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Here,

the Court believes there is a "reasonable probability" the deficiencies in Helm's

fraud claim can be cured via amendment. *Id.* Accordingly, the Court will afford

Helm an opportunity to amend his complaint to conform to the strictures of Rule

9(b).

## C. Interference

Helm's fourth and fifth claims are for tortious interference with contract and

interference with a prospective business advantage.[2] [DN 1 at 16-17.] He alleges

that "[i]n 2009, Helm possessed important contractual rights at the University,

including . . . his annual faculty appointment[] and rights under the Redbook and

the ORI Policy." [*Id.* at 16.] By engaging in the conduct outlined in his complaint,

Helm says, Defendants tortuously interfered with those contractual rights. [*Id.*]

Helm also avers that "[i]n 2009, [his] experience as a teacher, surgeon, and

researcher at the University provided him with a valid business relationship or

expectancy. By engaging in the above conduct, Defendants interfered with Helm's

prospective business advantage." [*Id.*] In his briefing, Helm further clarifies his

---

[2] To prevail on his tortious interference with contractual relations claim, Helm must show "(1) the existence of a contract; (2) Defendants' knowledge of this contract; (3) that the Defendants intended to cause its breach; (4) the Defendants' conduct caused the breach or prevented the contract from coming into being; (5) this breach resulted in damages to [Helm]; and (6) the Defendants had no privilege or justification to excuse its conduct." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 552-53 (W.D. Ky. 2005) (citations omitted). His interference with a prospective advantage claim, on the other hand, requires him to prove Defendants "(1) intentionally and improperly interfered with (2) [Helm's] prospective contractual relation by (3) either inducing a third person not to enter or discontinue the prospective relation or by preventing the other from continuing the prospective relation and (4) causing pecuniary harm resulting from the loss of the benefits of the relation." *Mountain Motorsports Paving & Const. LLC v. Yamaha Motor Corp., U.S.A.*, No. 14-76-ART, 2014 WL 5341865, at *6 (E.D. Ky. Oct. 20, 2014) (citation omitted).

interference claims, saying "Defendants . . . interfered with Helm's contractual guarantees under the Research Misconduct Policy . . . by deeming the plagiarism allegations against Helm as 'internal' and 'beyond the scope' of the policy." [DN 11 at 19.]

A five-year limitations period applies to Helm's interference claims. *Williams v. Owensboro Bd. of Educ.*, No. 4:07-CV-149-R, 2009 WL 248426, at *3 (W.D. Ky. Feb. 3, 2009) (citing *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 832 (6th Cir. 1969); *see also* 21 Julie Namkin, *Ky. Prac. Elements of an Action* § 3:6 (2016 ed.). Defendants argue Helm's interference claims accrued in 2009, when they first classified Taylor's plagiarism complaint as "internal." If so, Helm's claims, filed in 2016, would be time-barred.

Helm, however, contends that the "discovery rule" operates to toll the statute of limitations as to his interference claims. "Under the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) not only that he has been injured, but also that this injury may have been caused by the defendant's conduct." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010) (alterations in original omitted). Like his § 1983 claims, Helm contends that he discovered his interference claims only when the University revealed it classified Taylor's 2009 plagiarism complaint against him as "internal." Helm argues this discovery occurred in January 2016, when the University disclosed the federal ORI letter. But as explained in Part III.A, Helm knew or should have known about the possible misclassification in November 2015.

Either way, if the discovery rule applies, Helm's suit would seem to fall within the applicable five-year limitations period.

In Kentucky, the discovery rule is largely a creature of statute, and "[w]ith the exception of cases involving latent injuries from exposure to harmful substances, Kentucky courts have generally refused to extend the discovery rule without statutory authority to do so." *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 288 (Ky. Ct. App. 1998). KRS 413.120(6) supplies a five-year statute of limitations for "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." Helm's interference claims fall under this catch-all provision. *Williams*, 2009 WL 248426, at *3.[3] In turn, KRS 413.130 extends the discovery rule to some, but not all, of the causes of action listed in KRS 413.120. The catch-all provision, KRS 413.120(6), is not among those subsections affected. So as a matter of statute, the discovery rule does not apply to Helm's interference claims.

Turning to precedent, the nearest case on point is *Kindoll v. Gonterman*, where in an unpublished opinion, the Kentucky Court of Appeals held the discovery rule did not apply to the plaintiff's interference with employment relationship claim. *Kindoll v. Gonterman*, Nos. 2003-CA-002561-MR, 2003-CA-002638-MR, 2005 WL 386880, at *3 (Ky. Ct. App. Feb. 18, 2005). Other cases similarly counsel that courts should apply the discovery rule in only the narrowest of circumstances, "where the fact of injury or offending instrumentality is not immediately evident or

---

[3] In 2009, when *Williams* was decided, the catch-all provision was KRS 413.120(7). In 2015, Kentucky's General Assembly amended the statute and renumbered its subsections. The new catch-all provision, KRS 413.120(6), is identically worded to its predecessor.

discoverable with the exercise of reasonable diligence." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010) (citing cases).

Here, the Court is doubtful that the discovery rule operates to save Helm's interference claims from being untimely. Nevertheless, the Court need not pass upon that issue, because even if the discovery rule does not apply, Helm may be entitled to equitable tolling. As noted above, "[w]hen a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by . . . concealing himself or by any other indirect means obstructs the prosecution of the action," KRS 413.190, the statute of limitations is tolled until the defendant's concealment is revealed or the plaintiff "should have discovered his cause of action by reasonable diligence," *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 575 (Ky. 2009) (citation omitted).

At this juncture, it is important to understand how Helm's interference claims work together with his fraudulent concealment claim. His interference claims are predicated upon the notion that in 2009, Defendants wrongly determined Taylor's plagiarism complaint did not involve federal dollars. And his fraudulent concealment claim is based upon his allegation that Defendants concealed that determination from him until 2015 or 2016. Thus, the basis for Helm's fraudulent concealment claim is seemingly identical to the reason he claims he is entitled to equitable tolling on his interference claims. It follows, then, that if Helm were to prevail on his fraudulent concealment claim, equitable tolling might save his interference claims from being untimely.

The problem, of course, is that Helm has failed to plead his fraudulent concealment claim with the required specificity. And because Helm is entitled to amend his complaint as to that claim, it would be premature to decide whether Helm is entitled to equitable tolling. The Court will leave that question for another day. Helm's interference claims may proceed, at least for the time being.[4]

### D. Breach of Fiduciary Duty

Helm's last claim is for breach of fiduciary duty. His complaint alleges that "[i]n their capacities as persons involved in the Office of Research Integrity at the University of Louisville, Defendants owed special and heightened duties to faculty members such as Helm who may be accused of research misconduct." [DN 1 at 17.] Defendants argue Helm's complaint fails to state a claim for breach of fiduciary duty, and also falls outside the statute of limitations for such a claim.

Contrary to what Defendants assert, Helm has adequately alleged the necessary elements of a breach of fiduciary claim under Kentucky law: "(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation." *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013). And Rule 9(b)'s heightened pleading standard does not apply here.

---

[4] This holding does not conflict with the Court's prior determination that Helm is not entitled to equitable tolling on his § 1983 claims. Tolling ends when the plaintiff discovers the defendant's concealment. *Emberton*, 299 S.W.3d at 575. Here, that discovery occurred no later than November 2015. Even if the clock started running in November 2015, Helm's December 2016 complaint still falls outside the one-year statute of limitations for his § 1983 claims. It does, however, fall inside the five-year limitations period for his interference claims.

As to the statute of limitations issue, it would seem that if Defendants breached any duties owed to Helm, their breach would have occurred in 2009 – outside the five-year limitations period for that claim. *Martello v. Santana*, 874 F. Supp. 2d 658, 676 n.7 (E.D. Ky. 2012) (citations omitted). Moreover, Kentucky's discovery rule does not extend to breach of fiduciary claims. *Bariteau v. PNC Fin. Servs. Grp., Inc.*, 285 F. App'x 218, 233-24 (6th Cir. 2008).

Nevertheless, the reasoning from the preceding section applies with full force here. If Helm can state a claim for fraudulent concealment, he may be entitled to equitable tolling on his breach of fiduciary duty claim. It too may proceed.

## IV. Conclusion and Order

For the foregoing reasons, IT IS HEREBY ORDERED:

Defendants' motion to dismiss [DN 7] is GRANTED IN PART and DENIED IN PART. Helm's § 1983 claims, counts one and two of his complaint, are DISMISSED WITH PREJUDICE. Within twenty-one days of the entry of this Order, Helm shall file and serve an amended complaint stating a fraud claim in conformity with Federal Rule of Civil Procedure 9(b). Failure to do so risks dismissal of all remaining claims.

Helm's motion for oral argument [DN 16] is DENIED AS MOOT.

CC: Counsel of Record